Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/04/2018 12:20 AM CDT

State of Nebraska, appellee, v.
Seth Ehren Blimling, appellant.
___ N.W.2d ___

Filed March 27, 2018.    No. A-17-1079.

1. **Criminal Law: Courts: Juvenile Courts: Jurisdiction: Appeal and
   Error.** A trial court's denial of a motion to transfer a pending criminal
   proceeding to the juvenile court is reviewed for an abuse of discretion.
2. **Judgments: Words and Phrases.** An abuse of discretion occurs when a
   trial court's decision is based upon reasons that are untenable or unrea-
   sonable or if its action is clearly against justice or conscience, reason,
   and evidence.
3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues
   presented for review, it is the duty of an appellate court to determine
   whether it has jurisdiction over the matter before it.
4. **Courts: Juvenile Courts: Jurisdiction: Final Orders: Appeal and
   Error.** An order granting or denying transfer of a case from county or
   district court to juvenile court shall be considered a final order for the
   purposes of appeal.
5. **Courts: Juvenile Courts: Jurisdiction: Proof.** After considering all the
   evidence and reasons presented by both parties, the case shall be trans-
   ferred to juvenile court unless a sound basis exists for retaining the case
   in county court or district court. The burden of proving a sound basis for
   retention lies with the State.
6. **Courts: Juvenile Courts: Jurisdiction: Evidence.** When a court's basis
   for retaining jurisdiction over a juvenile is supported by appropriate evi-
   dence, it cannot be said that the court abused its discretion in refusing to
   transfer the case to the juvenile court.

Appeal from the District Court for Burt County: John E.
Samson, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Moore, Chief Judge, and Bishop and Arterburn, Judges.

Arterburn, Judge.

## INTRODUCTION

After giving a statement to police in which he admitted to intentionally hitting a classmate with his car, Seth Ehren Blimling was charged in the district court for Burt County with attempted first degree murder, assault in the second degree, and failing to render aid. Blimling was 15 years old at the time of the incident. The district court denied Blimling's motion to transfer his case to juvenile court. Blimling appeals from the district court's decision here. Upon our review, we do not find that the district court abused its discretion in denying Blimling's motion to transfer his case to juvenile court. Accordingly, we affirm.

## BACKGROUND

In February 2017, Blimling was 15 years old and a sophomore at Tekamah-Herman High School in Tekamah, Nebraska. On the morning of February 23, Blimling observed S.S., who was his "[e]x-best friend," and another classmate driving toward S.S.' house. Blimling followed them in his vehicle, and when they pulled into S.S.' driveway, Blimling parked in front of a nearby house. S.S. started to approach Blimling's vehicle, and Blimling "floored it as fast as it [could] go and . . . drove towards [S.S.]" Blimling hit S.S. with his car, causing S.S.' head to hit and crack the windshield of the vehicle and causing S.S. to fall to the ground. Blimling left the scene of the accident and drove to a church parking lot, where he called law enforcement and reported what he had done.

In his statement to law enforcement, Blimling stated that it had "felt good" to hit S.S. with his car. Blimling also stated that when he saw S.S. get up after being hit, he thought,

"'Darn' him." Blimling admitted that he had thought about hurting S.S. the night before this incident and stated that when he had seen S.S. driving home that morning, he thought, "'Hey there's [S.S.,] why not.'" He stated, "I also followed him for a bit too. I hated him." Blimling told law enforcement that he was upset with S.S. because S.S. had been harassing him using social media and had broken a golf club that belonged to Blimling's great-grandfather. In text messages to another classmate about this incident, Blimling stated that he "wanted him hurt bad" and that he "wanted him dead."

Another classmate of Blimling's observed the incident and provided a statement to law enforcement. He reported that Blimling "took off and hit [S.S.], he didn't stop or nothing[,] he kept on driving." Another student reported a somewhat similar incident involving Blimling. The student reported that one day as he was walking home, Blimling, who was driving a car, slowly followed the student for a distance. When the student crossed the street, Blimling drove very close to him and said, "'Better watch your back.'"

The State filed an information charging Blimling with count I: attempted first degree murder, in violation of Neb. Rev. Stat. §§ 28-201(1)(b) and 28-303(1) (Reissue 2016), a Class II felony; count II: assault in the second degree, in violation of Neb. Rev. Stat. § 28-309(1)(a) (Reissue 2016), a Class IIA felony; and count III: failure to render aid, in violation of Neb. Rev. Stat. § 60-697 (Reissue 2016), a Class IIIA felony. Shortly after the State filed the information, Blimling filed a motion requesting the district court to waive jurisdiction and transfer the case to juvenile court.

The district court conducted an evidentiary hearing on Blimling's motion. The evidence presented at the hearing reflects that Blimling was born in August 2001. Although Blimling was 15 years old at the time of the offenses in February 2017, he had turned 16 years old by the time of the evidentiary hearing, which was held on August 11, 2017. Both of Blimling's biological parents testified at the hearing.

In addition, a probation officer testified about various treatment alternatives.

Steve Ortmeier, a chief deputy probation officer, testified to the various treatment alternatives that would be available for Blimling should his case remain in the district court as opposed to the juvenile court. Ortmeier testified that with the exception of an in-home intensive family preservation program, the remaining probationary programs Blimling could be ordered to participate in would be available as part of both a juvenile or adult probation order. He further noted that an adult probation order could remain in effect for 5 years from the date of sentencing. A juvenile probation order would begin at disposition and end when Blimling turned 19 years old. Ortmeier testified to sanction alternatives in both adult and juvenile court.

Blimling's father, Patrick Blimling (Patrick), testified that in February 2017, Blimling had been residing with him for approximately 4 years. Patrick testified that in February 2017, Blimling was a sophomore in high school. However, he was behind on his credits due to some "behavioral issues" that had occurred during the school year. Patrick confirmed that Blimling had an individualized education plan due to his behavioral issues.

During the 4 years Blimling resided with Patrick, Blimling had spent some time in counseling to address his attention deficit hyperactivity disorder (ADHD). However, in the months leading up to February 2017, Blimling was not engaged in any type of counseling. In addition, Patrick testified that Blimling used to take medication for his ADHD condition when he was younger, but that he had stopped taking the medication during his eighth grade year because of the side effects. Patrick testified that he did not feel that Blimling's ADHD condition was "bad enough" to warrant the medication that had been prescribed.

Patrick testified that Blimling and S.S. were good friends prior to February 2017. In the weeks leading up to

February 23, 2017, however, a change in their relationship had occurred. Patrick described the relationship as having "deteriorated" and testified that Blimling's demeanor as a result of the problems in the relationship was "anger, a little bit of disappointment, upset." Patrick recounted an incident where S.S. had broken a golf club as a possible source of the relationship problems.

Blimling's mother, Bridgette Kult (Bridgette), also testified at the hearing. She testified that in February 2017, she had custody of Blimling pursuant to a court order, but she had been allowing him to live with Patrick since approximately June 2014. She agreed with Patrick's testimony that Blimling had an individualized education plan at school due to his behavioral issues. She explained that these issues were mostly due to Blimling's ADHD. He was easily distracted and fidgety during classes. Bridgette testified that she did not recall being consulted about Blimling's stopping his ADHD medication.

The bulk of Bridgette's testimony focused on events which occurred after February 23, 2017. Bridgette testified that Blimling lived with her for a period of time after February 23. Blimling lived with Bridgette, her husband, and Blimling's half sister after he was released from custody in April 2017. However, in mid-April, there was an incident between Blimling and Bridgette's husband that caused Blimling to leave their residence. Bridgette testified that Blimling and her husband had a confrontation after Blimling failed to listen to her repeated instructions. "[I]t was verbal shortly, then it elevated and became physical very briefly, [and] the boys went their separate ways." Blimling was unable to calm himself down after this incident, and as a result, he was hospitalized for 8 days at a mental health facility. Blimling told the medical professionals at the facility that he had ideations about killing his stepfather. When he was released from inpatient care, he "object[ed]" to coming back to Bridgette's home because he did not want to be around his stepfather. At the time of the

evidentiary hearing, Blimling was residing with his maternal grandmother.

Bridgette testified that by the time of the hearing, Blimling was being treated by multiple mental health care providers. In addition, he was taking medication to control his ADHD and to reduce stress and anxiety. Bridgette testified that Blimling's behaviors have improved since his inpatient treatment and that his current outpatient therapy is helping Blimling perform at school and at home. In fact, Bridgette testified that Blimling is enrolled in high school in Omaha, Nebraska; has caught up with all of his credits; and has not had any misconduct reports from the school. At the time of the hearing, Blimling was ready to begin his junior year of high school. Bridgette plans to continue with all of Blimling's current therapeutic services.

Bridgette testified that she considers Blimling to be an "immature" 16 year old. She testified that he does not drive, does not have a job, and does not have a way of supporting himself.

In addition to the testimony of both of Blimling's parents, multiple exhibits were admitted into evidence at the evidentiary hearing. These exhibits include police reports relating to the February 23, 2017, incident; Blimling's school records from prior to February 23; and his mental health records from after February 23, including from his inpatient treatment.

Information from the exhibits indicates that Blimling had little criminal history. Before February 23, 2017, he had one traffic citation for careless driving, which he received on February 15. Despite Blimling's lack of criminal history, his school records reflect that Blimling had a pattern of disobeying authority figures. These records indicate that Blimling regularly assaulted other students and verbally abused his teachers and the school staff. Examples of Blimling's behaviors at school included the following: urinating on the bathroom floor, drawing on the walls, throwing a chair when asked to comply with school rules, stabbing another student's textbook

with a pen, using crude language with teachers, and hitting other students.

Blimling's mental health records indicate that he has been diagnosed with "disruptive mood dysregulation disorder" and ADHD. When Blimling was admitted to the mental health facility in April 2017, he reported having suicidal thoughts and feeling homicidal toward his stepfather. Blimling also reported that when his stepfather had confronted him about not listening to Bridgette, it was Blimling who initiated the physical confrontation. He reported that "when he gets angry, nothing can bring him back down." Blimling reported that he was using marijuana during this time period. Additionally, Blimling reported that prior to February 23, 2017, he was using marijuana on a weekly basis.

When Blimling was released from inpatient treatment, mental health professionals believed his homicidal feelings and thoughts had dissolved. However, Blimling continued to struggle. As late as June 2017, Bridgette reported to Blimling's therapist that he was not showing much improvement and that he needed to learn "'to let things go.'" In July 2017, Bridgette reported that Blimling was being difficult.

Reports from Blimling's therapists indicate that Blimling has made some progress in therapy since April 2017. He has learned skills to help him address his anger. In addition, he expressed a desire to keep his anger controlled and expressed some regret about what he did to S.S. in February 2017. However, Blimling continues to refuse to see his stepfather. He has also told his therapists that he is not sure that he can apply his coping skills if "a huge conflict or cris[i]s arises." Blimling desires to return to live with Patrick because there are "no rules" at Patrick's house. Blimling indicated that Patrick had recently purchased him a dirt bike and was planning on purchasing a car for him in the near future.

In its written order denying Blimling's motion to transfer, the district court found, after examining all the relevant factors, that the severity of Blimling's offenses coupled with his

history of disruptive and assaultive behaviors at school and his recurring homicidal ideations several months after the current offenses would require rehabilitative and security measures beyond the period of his minority.

Blimling appeals.

## ASSIGNMENT OF ERROR

Blimling contends that the district court erred in denying his motion to transfer his case to juvenile court.

## STANDARD OF REVIEW

[1,2] A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* We note that in the recently decided case of *In re Interest of Steven S.*, 299 Neb. 447, ___ N.W.2d ___ (2018), the Nebraska Supreme Court reaffirmed this standard of review for cases originally filed in adult court.

## ANALYSIS

### JURISDICTION

[3] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Id.* For an appellate court to acquire jurisdiction over an appeal, there must be either a final judgment or a final order entered by the court from which the appeal is taken. *Id.*

[4] The Nebraska Supreme Court recently held in *State v. Bluett, supra*, that a trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court was not a final, appealable order. That holding has since been statutorily overruled by 2017 Neb. Laws, L.B. 11, § 1, which amended Neb. Rev. Stat. § 29-1816 (Reissue 2016) to provide that an

"order granting or denying transfer of the case from county or district court to juvenile court shall be considered a final order for the purposes of appeal" and to further provide that, upon entry of such an order, "any party may appeal to the Court of Appeals within ten days." In the instant case, Blimling has properly perfected his appeal from the district court's denial of his motion to transfer his criminal proceeding to the juvenile court.

## Motion to Transfer
## to Juvenile Court

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in the juvenile court or in the county or district court. In the present case, the charge of attempted first degree murder, a Class II felony, and the charge of assault in the second degree, a Class IIA felony, against Blimling put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to § 29-1816(3).

In the instant case, when Blimling moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Reissue 2016):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the

juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

[5] The customary rules of evidence shall not be followed at such hearing, and "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" See § 29-1816(3)(a). As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which

more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

In this case, the district court issued a detailed 10-page order explaining its consideration and weighing of the various factors set forth in § 43-276. In the order, the court found that Blimling's actions on February 23, 2017, were premeditated and clearly showed that Blimling "had homicidal thoughts before, during, and subsequent to his action of running over his ex-best friend with a motor vehicle." In fact, the court found that Blimling desired to seriously harm S.S. and was disappointed that S.S. only suffered minor injuries. The court also found that in the months since Blimling ran over S.S., he had exhibited homicidal thoughts toward his stepfather. The court stated, "The two incidents show a troubling violent pattern." The court also stated, "The evidence of premeditation and lack of remorse after both incidents is somewhat alarming."

In its order, the district court acknowledged that Blimling had been undergoing therapy with multiple mental health professionals for more than 3 months prior to the evidentiary hearing. However, the court found that the mental health notes submitted into evidence "did not reflect substantial improvement in [Blimling's] malevolent thought process." The court stated:

> The Court has a concern that a successful mental health regimen may very well require treatment beyond [Blimling's] nineteenth birthday — especially in light of homicidal ideation against not only the victim in this case but [Blimling's] stepfather as well as the actions taken to fulfill the homicidal ideation against the victim.

The court indicated that Blimling did not have a criminal history. However, he did have a pattern of behavioral issues and a lack of respect for others which was evidenced by his school records. This history of behavioral issues at school coupled with Blimling's homicidal ideations and lack

of remorse "indicates that the safety of the public could be in jeopardy until [Blimling] has successfully completed mental health therapy."

Ultimately, the court found that multiple factors set forth in § 43-276 weighed in favor of retaining jurisdiction of the case in district court, including the treatment options available to Blimling, Blimling's motivation for committing the current offenses, the violence associated with Blimling's offenses, Blimling's current age and the potential length of required treatment, Blimling's best interests, the consideration of public safety, and Blimling's ability to appreciate the nature and seriousness of his conduct. Based on its consideration of these factors, and all of the factors delineated in § 43-276, the district court refused Blimling's request to transfer the proceedings to the juvenile court.

In this appeal, Blimling challenges the weighing process employed by the court in reaching its decision. He argues that the court placed too much weight on the nature and circumstances of the offenses and too little weight on his "age, immaturity, lack of criminal history, and treatment efforts." Brief for appellant at 7. He also argues that the court erred in finding that he would require treatment beyond the age of 19.

In our review of the record, we find support for the district court's finding that Blimling will require treatment beyond his 19th birthday. Blimling was already 16 years old at the time of the evidentiary hearing. The evidence reveals that he suffers from serious mental health issues which are not yet adequately controlled through medication or through therapeutic intervention. Perhaps because of these mental health issues, Blimling has demonstrated a pattern of violent, aggressive, and offensive behavior at school, in the community, and at home. The evidence strongly suggests that Blimling will likely need treatment for more than the 2½ years he has left before he reaches the age of majority.

[6] In our review, we do not consider lightly Blimling's youth or his lack of any criminal history. However, much like

the district court, we cannot ignore the violent and disturbing nature of Blimling's crime, his lack of remorse, or his continuing anger and homicidal ideations. We further cannot ignore that the events for which Blimling has been charged are not isolated given the history of assaultive and disruptive behavior noted in his school records and the separate incident wherein Blimling, who was driving a car, followed another student and then made a threatening statement. When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to the juvenile court. See *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009). Because there is ample evidence to support each of the findings which led the district court to deny Blimling's motion to transfer, we cannot and do not conclude that it abused its discretion.

## CONCLUSION

For the reasons discussed, we conclude that the district court did not abuse its discretion in denying Blimling's motion to transfer his case to juvenile court. As such, we affirm.

Affirmed.