IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. HUYNH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DUSTIN K. HUYNH, APPELLANT.

Filed May 7, 2019.    No. A-18-1157.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Matthew F. Meyerle for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Dustin K. Huynh, a juvenile, was charged in the district court for Lancaster County with four felonies. He filed a motion to transfer the case to juvenile court, which was denied. Huynh appeals the denial of the motion to transfer. Based on the reasons that follow, we affirm.

## BACKGROUND

On August 23, 2018, the State filed an information charging Huynh with count I, possession of a firearm while in violation of Neb. Rev. Stat. § 28-416(1) (Cum. Supp. 2018), to wit: did knowingly or intentionally manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance (marijuana); count II, possession of money to be used to facilitate a violation of § 28-416(1); count III, possession of a controlled substance (Alprazolam); and count IV, possession of a controlled substance

(Tetrahydrocannabinol (THC)). Huynh was born in April 2001 and was 17 years old at the time the alleged offenses were committed.

The charges stem from a traffic stop on July 22, 2018. Lincoln Police Officer Wagner stopped a vehicle for speeding. Wagner approached the vehicle and made contact with the occupants which included the driver, a passenger in the front seat, who was identified as Huynh, and a rear seat passenger. Wagner learned that the vehicle belonged to Huynh. During his contact with the individuals, he observed a strong odor of burnt marijuana coming from the vehicle. Wagner asked to search the vehicle and the driver disclosed that the group had smoked from a blunt earlier that he would find in the center cupholder area of the vehicle. He observed that the cupholder area contained numerous marijuana roaches. He also observed a black digital scale in plain view near the cupholders. The scale was later found to contain marijuana residue.

Prior to the search of the vehicle, Lincoln Police Officer Elgan arrived on scene. Wagner and Elgan asked the occupants to exit the vehicle and Elgan made contact with Huynh on the passenger side of the vehicle. He observed a strong smell of marijuana emanating from the vehicle's interior. As Huynh got out of the vehicle, Elgan asked him where he would find marijuana inside the vehicle and Huynh told him there was marijuana in the passenger side door. Elgan asked Huynh if it was his marijuana and Huynh indicated that it belonged to the driver.

When the officers searched the vehicle, Elgan began the search with the front passenger compartment area. In the front passenger door pocket he located three separate plastic sandwich baggies. One of the baggies contained 20.4 grams of marijuana, another one contained 2.6 grams of marijuana, and the third one contained three pieces of THC wax weighing 4.8 grams. During a further search, Elgan opened the glove compartment which was directly in front of where Huynh had been sitting, and he found a Smith & Wesson 9-mm handgun. The gun had a loaded magazine with seven rounds, but no round in the chamber. Police later discovered that the gun had been reported stolen. Huynh's driver's license was also located in the glove compartment. At that point, Huynh was placed under arrest. He stated to the officers, "I'm 17 doing dumb shit." Huynh was searched and the officers found $176 of suspected narcotic sale proceeds crumpled up in his pockets. The money was in varying denominations as if it was secured through numerous transactions.

The police officers also discovered two other baggies of marijuana, weighing 44.1 grams and 7 grams, in the center console within reach of both Huynh and the driver. A storage area near the center console directly between where Huynh and the driver were sitting contained a yellow pill that was identified as Alprazolam, a schedule IV narcotic. A search of the driver's purse found another baggie with 5.5 grams of marijuana and $160 in cash that was wadded into her wallet. Wagner stated in his report that based on his training and experience, the total amount of marijuana, packaging of various amounts, money, scale, and firearm possession was consistent with that of narcotic sales and distribution.

The driver of the car told police that she knew Huynh was a drug dealer and that was the reason he had the firearm. She stated that Huynh had shown her the firearm less than 24 hours prior to the traffic stop. She also said the group had knowingly been selling narcotics earlier that evening, and she estimated the group had made three deliveries.

The driver also subsequently consented to a search of her cell phone after she admitted that she was using her Snapchat account to post photographs of the drugs in order to help Huynh sell

them. The search revealed that her Snapchat account had photographs and videos of the THC Wax, fresh marijuana in baggies like those located in the vehicle, and a bottle of prescription cough syrup. Police also obtained information from Huynh's phone. Both phones had pictures and videos showing Huynh smoking what appeared to be marijuana and displaying the firearm found in the car. Both phones also contained messages between Huynh and the driver about selling narcotics, and there were messages on Huynh's phone between him and other individuals in regard to him selling narcotics.

Huynh filed a "Motion to Waive Jurisdiction to the Separate Juvenile Court of Lancaster County, Nebraska" and a hearing was held on the motion. The State offered five exhibits into evidence. Exhibits 1 and 2 were police reports authored by Wagner and Elgan, respectively, describing the incident and investigations related to the charges against Huynh. Exhibit 3 was a police report authored by the police officer who examined Huynh's cell phone; Exhibit 4 was another police report authored by Wagner describing the information found on Huynh's and the driver's cell phones; and Exhibit 5 was Huynh's Detention Authorization, and Juvenile Intake Summary.

Huynh offered testimony from two witnesses, as well as two exhibits. Huynh's first witness was Ryan Dvorak, a supervisor with the Lancaster County Human Services' Pre-Adjudication Office. He testified that he supervises juveniles prior to adjudication. He also had been a juvenile probation officer for 14 years. Dvorak testified that he had not had any professional contact with Huynh prior to this case and had not heard his name associated with gang activity in the monthly meetings he attended with the Lincoln Police Department's gang unit. He testified that Huynh had no prior criminal history or juvenile adjudications. He also testified that he reviewed the police reports from the case and there was no evidence that the offense included violence or that the firearm was used. Huynh's mother told Dvorak she had mental health and substance abuse concerns about Huynh which needed to be addressed. Dvorak noted that Huynh was a good student, was on track to graduate, and had no school-related behavioral concerns aside from recent truancy issues. He also testified Huynh told him that in November 2017, he started going through a depressive state, and that over time, he became less interested in school which led to more truancies.

Huynh then offered exhibit 6, a certified copy of a case file from a juvenile adjudicated in Lancaster County Juvenile Court on similar charges in 2017. Dvorak had supervised the juvenile when he was a probation officer. The exhibit was offered for the purpose of showing the Juvenile Probation Office has the ability to supervise youth who are adjudicated on firearms offenses.

Huynh's second witness was Amy Champoux, a juvenile probation supervisor who oversees probation officers with high-risk juvenile cases, including youth adjudicated for firearms offenses. Champoux agreed with Dvorak that Huynh had no previous involvement with juvenile probation or any prior adjudications.

Champoux testified regarding the levels of juvenile probation supervision, including therapeutic in-home services such as intensive family preservation or multisystemic therapy, which are not utilized by adult probation. She testified that the levels of out-of-home placements include foster homes, group homes, treatment group homes, psychiatric residential treatment facilities, and the Youth Rehabilitation and Treatment Center. She stated that placement in a group home lasts an average of 9 months and that placement in treatment group homes is usually

longer--up to a year. Placement at the Youth Rehabilitation and Treatment Center is usually 6 to 12 months for boys. Champoux further testified about the consequences that can result if a juvenile is not successful or not compliant with the terms of probation.

She testified that at the time of the hearing, Huynh was 17 years old, and had an April birthday, which meant juvenile probation would have about 18 months to rehabilitate and treat Huynh. When asked if 18 months was enough time for juvenile probation's services to be successful, Champoux replied "[s]ometimes, yes." She also indicated that none of the services she testified about take longer than 18 months to complete. On cross-examination, Champoux testified that when a juvenile turns 19 years old, juvenile probation's involvement ends, regardless if further time was needed to complete treatment.

Finally, Huynh offered exhibit 7, a psychosocial history of Huynh prepared by a social worker with the Lancaster County Public Defender's Office. The report identified services that she believed Huynh would benefit from and juvenile probation could provide if his case was transferred to juvenile court. The services included intensive family preservation therapy or multisystemic therapy, a chemical dependency evaluation, and ongoing therapy to address his anxiety and depression.

Following the hearing, the district court denied the motion to transfer the matter to juvenile court. In its order, the district court considered the statutory factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016) and concluded that a sound basis existed for it to retain jurisdiction over the case.

ASSIGNMENT OF ERROR

Huynh assigns that the district court erred in denying his motion to transfer the case to juvenile court.

STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

Huynh assigns that the district court erred in denying his motion to transfer the case to juvenile court. Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, one of the allegations against Huynh put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Reissue 2016).

In the instant case, when Huynh moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a).

In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *State v. Comer*, 26 Neb. App. 270, 918 N.W.2d 13 (2018). In conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.* The burden of proving a sound basis for retention lies with the State. *Id.*

In its order, the district court set out each of the factors found in § 43-276 and made findings regarding each one. Huynh argues that the court abused its discretion when considering certain statutory factors. First, Huynh argues that the district court abused its discretion in refusing to transfer the case despite its conclusion that Huynh was amenable to juvenile treatment and services that can be provided under the Nebraska Juvenile Code. However, this is only one factor to be considered by the court in the transfer analysis.

Second, Huynh contends that the court abused its discretion when it concluded that the alleged offense included violence. The court noted that in the Juvenile Intake Screening Risk Assessment, the firearm offense was considered a violent felony offense. The court further found that there was evidence that Huynh's possession of the firearm was for the purpose of protection while distributing controlled substances, and that while the firearm was not loaded, the magazine

was loaded, and the gun was stolen. Therefore, the district court did not dismiss the fact that no violence was associated with the charges or the arrest, as Huynh contends. Rather, the district court relied on the Juvenile Intake Screening Risk Assessment and recognized that a juvenile in possession of a firearm for the purpose of protecting himself while selling drugs is characteristically violent in nature and had the potential for violence. Although the district court's reliance on the Risk Assessment's characterization of possession of a firearm being violent in nature may not by itself qualify as "evidence that the alleged offense included violence," per § 43-276(b), the totality of the evidence supports the court's determination that this factor favored retention. When considering possession of the firearm along with the evidence that the gun was stolen, loaded, and in proximity to Huynh and that Huynh was selling large quantities of drugs, the totality of such evidence supports the court's conclusion that this factor favored retention.

Third, Huynh argues the district court abused its discretion in considering "the age of the juvenile and the ages and circumstances of any others involved in the offense" because it failed to consider his age as a mitigating factor that weighed in favor of transferring the case to juvenile court. In its order, the court noted the ages of the other individuals Huynh was with at the time of his arrest, as well as the circumstances of the alleged offenses. The court concluded that supervision of Huynh, whether it be incarceration or probation, would extend beyond the time the juvenile court would have jurisdiction over him.

Huynh claims the court did not analyze Huynh's age and the role his age played as a mitigating factor, but, rather, emphasized the circumstances and seriousness of the alleged offenses. Huynh seems to argue that simply being a juvenile of any age is a factor that weighs in favor of transferring to juvenile court. The court clearly considered Huynh's age, but did not find his age to favor transferring the case, but, rather, weighed in favor of retaining jurisdiction. Huynh was 17 years old at the time of the offense and had approximately 17 months until reaching the age of majority at the time of the hearing. The juvenile court would have less than 17 months to rehabilitate Huynh because he would first have to be adjudicated.

Fourth, Huynh claims the district court abused its discretion in its application of the best interests of the juvenile factor. The court stated that this factor would seem to weigh in favor of transferring the matter to juvenile court, because it would be in Huynh's best interests not to have a felony conviction on his record, and an adjudication could be sealed in the future. The court further stated that for the purpose of rehabilitation however, it was in Huynh's best interests that he be supervised for a period longer than the juvenile court would have jurisdiction over him. Huynh argues that instead of analyzing his best interests as required under § 43-276(f), the court focused on the same considerations as it did in its analysis under § 43-276(i)--whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his minority. He suggests that the court ignored its conclusion that Huynh would be amenable to treatment and services provided in the juvenile court and it ignored the evidence provided by Dvorak, Champoux, and the psychosocial assessment, which led to a faulty finding that Huynh's best interests supported retaining jurisdiction in the district court. Contrary to Huynh's argument, it seems the court was balancing the best interests of Huynh in its analysis. Certainly it would be in the best interests of any juvenile to not have a felony record, but when considering the other evidence presented, the court concluded that retention in the district court was warranted.

The fifth abuse of discretion Huynh alleges is the court's consideration of his ability to appreciate the nature and seriousness of his conduct. The court stated that "[i]t is well known that the combination of firearms and distribution of controlled substances puts the safety and security of the community at risk" and concluded that the factor weighed in favor of retaining jurisdiction in district court. Huynh argues that the court failed to analyze his ability to appreciate the nature and seriousness of his conduct and instead reweighed consideration of public safety that it had previously analyzed. He contends that his statement to the police that he was 17 and "doing dumb shit" shows that he was not able to appreciate the nature and seriousness of his conduct. Although not noted by the court in its order, the evidence showed that Huynh was a good student, was on track to graduate, and had no school-related behavioral concerns aside from recent truancy issues. This seems to indicate that Huynh was an intelligent juvenile who would know right from wrong and had the ability to appreciate the nature and seriousness of his conduct.

Sixth, Huynh claims the district court abused its discretion when it found that Huynh's need for supervision would extend past his age of minority. He contends that there was no evidence to support this conclusion, as the evidence showed that he had no prior history of law violations or behavioral problems at school and no previous juvenile court involvement. The court stated that the juvenile court would have approximately 17 months to work with and rehabilitate Huynh. It concluded that the seriousness of the offenses charged, and the evidence received at the transfer hearing, indicated that Huynh's need for supervision will outlast his minority. Huynh views the court's consideration as failing to "undertake an individualized analysis" of his history and lack of a prior record. Brief for appellant at 20. However, the evidence showed that Huynh was charged with four felonies, including the firearm offense; was having truancy problems at school; had some anxiety and depression issues; and his family was concerned about his mental health and substance abuse. As the district court noted, the juvenile court would have limited time to work with Huynh and, further, that time would not start until after Huynh was adjudicated. The district court does not have the time constraints the juvenile court has and it has many of the same treatment options as the juvenile court. There was no evidence to indicate with certainty that Huynh will or will not need treatment beyond his minority. However, the court's concern that the juvenile court would not have enough time to treat Huynh before his 19th birthday was justified.

Huynh's seventh argument is that the district court erred when it stated that no evidence was received regarding § 43-276(m), whether a juvenile court order has been issued for the juvenile pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016). This statute provides in part:

> Any time after the disposition of a juvenile described in subdivision (1), (2), (3)(b), or (4) of section 43-247, upon the motion of any party or the court on its own motion, a hearing may be held regarding the amenability of the juvenile to the rehabilitative services that can be provided under the Nebraska Juvenile Code. The court may enter an order, based upon evidence presented at the hearing, finding that a juvenile is not amenable to rehabilitative services that can be provided under the Nebraska Juvenile Code.

Section 43-2,106.03 only applies to a juvenile who has been adjudicated. The evidence showed that Huynh had not been previously adjudicated and therefore, no order would have ever been issued pursuant to § 43-2,106.03. However, the district court was not wrong in stating that no evidence was received regarding this specific factor. In addition, the court acknowledged in other

sections of its order that Huynh did not have a prior juvenile record, and it found that Huynh was amendable to juvenile treatment and services.

Huynh's eighth and final argument is that the district court erred when it failed to consider other matters relevant to the decision of whether the case should be transferred to juvenile court under § 43-276(o). Specifically, Huynh contends that the court failed to weigh the evidence regarding similarly situated juveniles whose cases were determined to be appropriate for juvenile court. The district court was not required to consider other juvenile cases as part of its analysis. Rather, it was required to consider the facts and circumstances in the present case.

We conclude that the district court adequately considered all the factors set forth in § 43-276(1) and that the evidence supports the district court's denial of Huynh's motion to transfer. When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to the juvenile court. *State v. Blimling*, 25 Neb. App. 693, 911 N.W.2d 287 (2018). Upon our review of the record, we cannot say that the district court abused its discretion in denying Huynh's motion to transfer to juvenile court and in finding a sound basis to retain jurisdiction in district court.

CONCLUSION

For the reasons stated in this opinion, we conclude that the district court did not abuse its discretion in denying Huynh's motion to transfer the case to juvenile court. The order of the district court is affirmed.

AFFIRMED.