IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GARCIA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DILLEN C. GARCIA, APPELLANT.

Filed January 19, 2021.    No. A-20-624.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Dillen C. Garcia appeals from an order of the district court for Hall County denying his motion to transfer his case from the district court to the juvenile court. Finding no abuse of discretion in the district court's order, we affirm.

### BACKGROUND

On April 20, 2020, the State filed an information in district court charging Garcia with first degree assault on a peace officer, a Class ID felony, and obstructing a peace officer, a Class I misdemeanor. Garcia subsequently filed a motion to transfer the case to juvenile court.

A hearing was held on the motion to transfer. Grand Island Police Officer Bradley Brooks testified that on February 16, 2020, he responded to a call regarding gunshots fired and a kidnapping. When he arrived at the reported location, Garcia's mother was outside waving the officers down, and she advised them she heard gunshots and saw a green vehicle take off with

- 1 -

Garcia in the vehicle. While Brooks was speaking with Garcia's mother, she received a phone call from Garcia and Brooks spoke with Garcia on the phone. Garcia refused to provide his location to Brooks. About 15 minutes later, Garcia arrived back home. Brooks spoke with Garcia about what had happened and advised him that because he was currently on probation and he had contacts with the police earlier the same day, Brooks was going to have his supervisor come to the scene to decide what to do with Garcia. Brooks asked Garcia to sit in his patrol vehicle until his supervisor arrived, and as they began walking to the vehicle, Garcia started running in an apparent attempt to flee the scene. Brooks chased after him and tackled Garcia to the ground. Garcia refused to comply with Brooks' commands to put his hands behind his back and resisted being subdued. Garcia struck Brooks twice in the head with his fist and then managed to free his leg and kicked Brooks in the face, causing Brooks to fall backward. Garcia was able to get away and tried to flee again but Brooks tackled him to the ground again. Garcia continued to be physically uncooperative until another officer arrived and deployed his Taser. Garcia was then put in handcuffs and placed under arrest.

Following the confrontation, Brooks experienced severe pain in his face and lower back. He sought medical treatment and was diagnosed with a contusion to the left side of his face and a back sprain. Brooks testified that he continues to suffer from back pain and has received multiple epidural and lidocaine injections and that surgery is a possibility.

Garcia was 15 years' old at the time of the incident and was 16 years' old at the time of the hearing on the motion to transfer.

Prior to the incident on February 16, 2020, Garcia had contact with law enforcement earlier the same day as a result of being involved in stealing items from vehicles. Garcia's juvenile court history includes five previous adjudications for the following offenses: disturbing the peace--fighting; theft by unlawful taking; theft by unlawful taking; third degree assault; and disturbing the peace--fighting. He was placed on juvenile probation for each of the above offenses. He also had seven pending matters in juvenile court at the time of the hearing, all filed between December 3, 2019 and March 4, 2020. Copies of Garcia's juvenile court records from his past adjudications, as well as court files from the active cases, were entered into evidence.

As previously indicated, Garcia was on probation at the time of the offenses at issue. Kimberly Hughes, a high risk juvenile probation officer, testified that she began supervising Garcia in December 2019, but juvenile probation had been involved in supervising Garcia since July 2017. She testified that Garcia has been provided services meant to rehabilitate a juvenile with violent tendencies. The services included electronic monitoring, tracking, therapy, Aggression Replacement Training (ART) and Moral Reconation Therapy (MRT). He had completed ART, and participated in MRT, but did not complete it. Garcia has regularly tested positive for marijuana. His therapy was terminated because he would not cooperate or communicate with the therapist.

Hughes testified that when Garcia is confronted or questioned about something, he gets angry and leaves, which he had done at various meetings. She also testified that Garcia's violence is escalating from fighting peers at school to fighting a police officer, which she found concerning.

Hughes testified there are no other services juvenile probation can provide Garcia that would deal with his violent tendencies. She said that juvenile probation is unable to effectively supervise Garcia. It has exhausted all community-based efforts to keep him in the home. He had

been noncompliant with juvenile probation and Hughes believed he would continue the same pattern of noncompliant behavior. The next level of treatment for Garcia would be a residential treatment facility or a group home. Hughes testified, however, that group homes tend to deny placement of individuals with aggressive and/or violent behaviors. The only treatment facilities are the Youth Rehabilitation Treatment Center and Hastings Regional Center. Hughes stated that the Department of Corrections has some of the same programming available for violent juvenile offenders as juvenile probation, such as ART, MRT, and schooling, but it also has some clinical programs that juvenile probation does not have.

The State also presented evidence in the form of testimony from Hastings Police Officer Cale Neelly and police reports of Garcia's involvement in a shoplifting and stabbing incident that occurred on August 23, 2019. Garcia objected to the admission of this evidence, which was overruled. The evidence showed that during the evening on August 23, two juveniles shoplifted a bottle of alcohol from a local grocery store and ran out of the store. Later, a grocery store employee saw the two suspects, later identified as Garcia and Niko S., jumping a fence and going into a neighbor's backyard. The employee confronted the suspects who started running, and the employee chased after them. The employee caught up to them and grabbed Garcia. Niko, who was holding the bottle of alcohol in one hand, punched the employee with his other hand. Garcia then pulled out a knife and asked the employee, "Do you want to get stabbed?" Niko then stabbed him. The employee was certain Niko was the one who stabbed him and he described the knife as silver and about 3 inches long.

The next day, on August 24, 2019, a vehicle was stopped by law enforcement and Garcia was an occupant of the vehicle. He was found to be in possession of a silver knife. When interviewed at the police department, Garcia told Neelly that he was present during the shoplifting, but was not the one who stole the bottle of alcohol. Garcia also provided details about what happened after the shoplifting. He told Neelly that he was present during the stabbing of the grocery store employee, but was not the one who stabbed him. When asked about the knife found on him during the traffic stop, Garcia stated that Niko asked him to hold onto a knife for him, but he did not know if it was the weapon used in the stabbing.

The State also presented evidence of Garcia's gang affiliation. There was testimony from Grand Island Police Officer Wesley Tjaden that there were photos on social media of Garcia wearing clothing associated with a certain gang, flashing a gang hand sign, and appearing in some photos with other documented gang members. Tjaden testified that Garcia met six of the eight criteria to be documented as a gang member, and the Grand Island Police Department has documented him as a gang member. Garcia also admitted to Neelly that he was a gang member.

There was also evidence of Garcia's unauthorized possession of firearms based on social media messages, videos, and photographs downloaded from his phone.

Following the State's evidence, Garcia presented testimony from three family friends who knew Garcia before and after his father's death. Each witness testified that they observed a change in Garcia in the past few years, after his father committed suicide. Garcia was described as outgoing before his father's death, and angry and sad after his father's death. Hughes also testified that Garcia suffered trauma as a result of his father's suicide and there could be mental disorders stemming from his father's death.

Garcia also presented evidence from Dr. Kenneth DeFrank, who runs the Success Academy, which offers a more one-on-one educational program with a self-paced online curriculum for students who have not been successful in a traditional school environment. Garcia was referred to Success Academy 6 weeks into his freshman year of high school. Based on testing at the academy, his reading and math skills were only that of a third or fourth grader, indicating some type of learning disability. DeFrank described Garcia as a flight risk, meaning Garcia would leave the school without permission and they had to work to keep him in school.

Following the hearing, the district court entered an order denying Garcia's motion to transfer to juvenile court.

## ASSIGNMENTS OF ERROR

Garcia assigns that the district court erred in allowing evidence of the stabbing incident in Hastings, and denying his motion to transfer the case to juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who are (1) 11 years of age or older and commit a traffic offense that is not a felony or (2) 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, one of the allegations against Garcia, first degree assault on a police officer, a Class ID felony, puts him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).

In the instant case, when Garcia moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Supp. 2019):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her

conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a).

In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *State v. Comer*, 26 Neb. App. 270, 918 N.W.2d 13 (2018). In conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *Id.* at 276, 918 N.W.2d at 18. The burden of proving a sound basis for retention lies with the State. *Id.*

*Evidence of Stabbing Incident.*

Garcia first assigns that the district court erred in allowing evidence of the stabbing that occurred in Hastings on August 23, 2019. Garcia acknowledges that the rules of evidence are not followed at a hearing on a motion to transfer, but argues that the evidence should not have been admitted because it was not credible. He contends the evidence was not credible because no charges were filed against him and the extent of his involvement was unclear based on the witnesses. However, the evidence presented in regard to the stabbing incident included police reports and the testimony of Neelly. This evidence indicated that even if Garcia was not the one who stabbed the employee, he was present and involved in the incident. Such evidence was credible, and not speculation and conjecture as Garcia contends, as it included Garcia's own admissions, as well as other corroborating evidence. In its order the district court acknowledged that the evidence showed that although Garcia was implicated in the stabbing incident, he was not the one who inflicted the stabbing, which is consistent with what Garcia told Neelly. Garcia's first assignment of error fails.

*Denial of Motion to Transfer.*

Garcia next assigns that the district court erred in denying his motion to transfer the case to juvenile court. We disagree. The district court's order is thorough and discusses each of the 15 factors in § 43-276(1). The court found the following factors favored retention in the district court:

(b) the alleged offenses included violence; (e) Garcia's previous history, including whether he had been convicted of any previous offenses or adjudicated in juvenile court; (g) consideration of public safety; (l) Garcia's acknowledgment through social media of his unauthorized use or possession of a firearm; (n) Garcia's admission to being a member of a gang; and (o) other matters deemed relevant to aid in the decision, including Garcia's attitude, disregard for authority, and refusal to participate in probationary services.

We agree with the factors found by the district court to weigh in favor of denying the motion to transfer. Garcia does not dispute that the charges at issue included violence, although he tries to minimize the violence that occurred as well as Brooks' injuries, which he attributes to preexisting medical conditions. The current offenses clearly included violence given that Garcia punched Brooks twice in the head and kicked him in the face, causing injuries for which Brooks is still treating. The district court also found that Garcia had escalated from assaulting peers to assaulting a police officer. The court stated that Garcia was "beginning to establish a dangerous and disturbing trend of violating the law in an increasingly violent manner. . . . This Court determines this to be a highly serious and disturbing crime that was committed with total disregard for Officer Brooks' safety, health, and well-being."

Garcia's previous history includes a lengthy criminal history as a juvenile offender. Garcia admits that he has a prior juvenile court record, with or without the stabbing incident. He has been adjudicated five times in juvenile court. Garcia was on probation at the time these alleged offenses were committed. The crimes that led to past adjudications included two charges of disturbing the peace--fighting, third degree assault, and two charges of theft by unlawful taking. He was placed on probation each time he was adjudicated.

There were also seven cases pending against Garcia at the time of the hearing filed between December 3, 2019, and March 4, 2020. The charges in these cases include multiple charges of criminal mischief, unauthorized application of graffiti, carrying a concealed weapon (knife), multiple charges of theft by unlawful taking, and others. The scenarios that led to these charges include Garcia cutting off his electronic ankle monitor causing damage to the device on two occasions, spray painting explicit words on a vehicle, a traffic stop where Garcia concealed a knife, vandalism of at least 70 vehicles with a BB gun, pointing a firearm (later determined to be a BB gun) at another individual, and multiple thefts. The court stated that the pending cases against Garcia showed an increase in severity of charges, an increase in the frequency of cases, and an increase of charges per case.

Public safety was also a valid concern by the district court and one that weighs against granting the motion to transfer. Garcia's criminal path is escalating in seriousness and frequency. The court noted his involvement in the stabbing incident. It found his gang affiliation to be of great concern, as well as his use of illegal substances and the evidence suggesting he has access to firearms. The court also found that Garcia has demonstrated that he is willing to selfishly and violently harm anyone who may interrupt his plan of action. We agree with the court that the safety of the public, as well as law enforcement, is a valid concern that favors retaining the case in district court.

In regard to Garcia's conviction of or acknowledged unauthorized use or possession of a firearm, the court noted that Garcia has never been convicted of a firearm offense. However, it was

concerned about Garcia's fascination with firearms. One of the exhibits contained social media messages, videos, and photographs downloaded from Garcia's phone showing him in possession of firearms. As the court noted, Garcia has not verbally acknowledged possessing firearms, but the photographic evidence proves that Garcia has unlawfully possessed firearms. The court stated that it was concerned that Garcia was attempting to create a persona involving the use of firearms.

The evidence also supports the court's determination that Garcia is a gang member. Garcia has admitted he is a member of a specific gang. Tjaden testified about Garcia's gang related contacts and actions. The Grand Island Police Department has determined that Garcia satisfied six of the eight criteria documented used to classify an individual as a gang member, including self-admission, and has documented him as a known criminal street gang member. Brooks and Hughes also confirmed they were both aware Garcia was a documented gang member.

Finally, the court found that Garcia's attitude and disregard for authority was relevant to aid in its decision and weighed in favor of denying the motion to transfer. Garcia has been offered numerous services to help him make positive changes in his life, but no changes have occurred. He has repeatedly failed to participate in or has voluntarily left programs designed to help him succeed. He is uncooperative with his probation officer and has failed to comply with the terms and conditions of his probation, including cutting off his ankle monitor on more than one occasion. Garcia's therapist discontinued meeting with Garcia because he was uncooperative.

Garcia suggests that the court failed to consider his level of intelligence, his "fleeing" attitude, and the trauma of his father's suicide. However, in its order, the district court did take these issues into account in considering the motion to transfer. The court found that the evidence did not reflect that Garcia did not understand why he was before the court or that he did not understand right from wrong. It concluded that Garcia had the ability to appreciate the nature and seriousness of his conduct. The court also considered that Garcia may still be processing the death of his father, and that his age and emotional maturity may magnify Garcia's emotional reaction. It also noted that he had not received counseling to address the trauma of his father's death and took note of his "severe emotional trauma."

The district court also discussed Garcia's "fleeing" attitude when discussing his motivation to commit the offense. It stated that the characterization of Garcia as a member of the "flight" category was a plausible explanation of the previous failed attempts to rehabilitate Garcia, but did not constitute a justification for his conduct in physically assaulting Brooks. Contrary to Garcia's suggestion, the court's order shows that it considered each of the facts Garcia alleged the court failed to consider when balancing the statutory factors.

We conclude that the district court adequately considered all the factors set forth in § 43-276(1) and that the evidence supports the district court's denial of Garcia's motion to transfer. When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to the juvenile court. *State v. Blimling*, 25 Neb. App. 693, 911 N.W.2d 287 (2018).

Upon our review of the record, we cannot say that the district court abused its discretion in denying Garcia's motion to transfer to juvenile court and in finding a sound basis to retain jurisdiction in district court. The court was tasked with balancing public safety and security against the rehabilitative needs of Garcia. This balance requires a thoughtful consideration of the relevant

statutory factors. The district court conducted and set out its thoughtful analysis, ultimately concluding that the case should be retained in the district court.

CONCLUSION

For the reasons stated in this opinion, we conclude that the district court did not abuse its discretion in denying Garcia's motion to transfer the case to juvenile court.

AFFIRMED.