IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. BRAVO


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

DANGELO BRAVO, APPELLANT.


Filed July 28, 2020.    No. A-20-066.


Appeal from the District Court for Sarpy County: NATHAN B. COX, Judge. Affirmed.

John P. Hascall and Dennis P. Marks, Deputy Sarpy County Public Defenders, for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.


PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

## INTRODUCTION

Dangelo Bravo, a juvenile, was charged in the district court for Sarpy County with two felonies. He filed a motion to transfer the case to juvenile court, which was denied. Bravo now appeals the denial of the motion to transfer. Based on the reasons that follow, we affirm.

## BACKGROUND

On October 31, 2019, the State filed an information charging Bravo with robbery, a Class II felony, and use of a firearm to commit a felony, a Class IC felony. The charges arose from a robbery of a Kum & Go gas station in Sarpy County on September 30. Bravo was 16 years 10 months old at the time the alleged offenses were committed.

The affidavit of probable cause included in the police reports show that one of the three suspects involved told police that he was picked up by Bravo and another individual, and that

- 1 -

Bravo and the other individual wanted to rob a gas station to get money. Bravo had two guns, black semiautomatic pistols. Bravo gave one of the guns to the reporting suspect, who did not want to go through with it, but Bravo convinced him to do it. The clerk at the gas station reported two males came into the gas station pointing semiautomatic handguns directly at him and demanded money and property. The clerk opened the registers, removed the money drawers, and set them on the counter. The two suspects emptied the drawers and then demanded a bottle of alcohol and some cigars. The clerk complied, and then the suspects both came behind the register and grabbed a large amount of cigars. Bravo fled with his two accomplices in a vehicle and when police attempted to stop the vehicle, the suspects tried to avoid being apprehended.

Bravo filed a motion to transfer the case to the separate juvenile court for Sarpy County and a hearing was held on the motion on December 11, 2019. The State entered four exhibits into evidence: a copy of Bravo's pending case in the separate juvenile court of Douglas County, police reports associated with the current case, a report with Bravo's criminal history and record, and a printout showing a current case pending against Bravo in Douglas County District Court. The State presented the testimony of two juvenile probation officers, Maddelyn Bal from Douglas County and Heather Moran from Sarpy County. Bravo presented testimony from his mother.

The evidence showed that Bravo had been adjudicated on an attempted robbery charge in the separate juvenile court of Douglas County. The case was at the predisposition phase at the time of the hearing. The record from the juvenile court case showed that the matter was originally filed in the district court but was transferred to juvenile court. The original charges were attempted robbery and use of a deadly weapon to commit a felony. Bravo admitted to the charge of attempted robbery and the other charge was dismissed.

Bal, a Douglas County juvenile probation officer, testified that she had been Bravo's probation supervisor since June 19, 2019. When she first met Bravo, he was placed at a Boys Town shelter, a short-term placement for youth and an alternative to detention. Bal testified that it was her understanding that Bravo had been placed at the shelter after asking to be moved there from detention. Bravo ran away from the shelter in July 2019 and his whereabouts were unknown for a month.

After Bravo was found, he was placed at home with his mother and ordered to wear a global positioning system tracker device on his ankle. He failed to charge the device, which was necessary for it to work properly. He also violated other conditions of his release, including leaving home without permission and failing to attend school consistently. He was placed back in detention after the present charges were filed against him.

Bal indicated that a psychological and substance abuse evaluation had been completed in Bravo's case in the separate juvenile court of Douglas County, but that Bravo had not been able to follow any of the recommendations because he had been detained. The substance abuse evaluation recommended that Bravo complete intensive outpatient treatment and Bal testified that such treatment can take at least 12 weeks. The psychological evaluation recommended multisystemic therapy, which involves a therapist working with Bravo's family, school, and other extracurricular activities he is involved in. She stated that such therapy lasts about 4 months. Bal also discussed other programs that are available through the separate juvenile court of Douglas County. She stated

there was no guarantee that Bravo would be able to complete the requirements ordered by the juvenile court by his 19th birthday.

Moran, a juvenile probation officer in Sarpy County, testified about the progression of a juvenile case in Sarpy County. She testified that a case starts with a filing, and then about 4 to 6 weeks later, the juvenile has a first appearance in court. The court can order services at the time of the juvenile's first appearance, such as a tracker, electronic monitoring, and in-home services like family support, intensive family preservation, and multisystemic therapy. The court can also order evaluations. The next stage is a pretrial hearing, which is followed by adjudication, where the juvenile may admit to the allegations against him or her. In a case where a juvenile admits, a disposition hearing is set and the court orders a predisposition interview. The matter would be back in court after about 4 to 6 weeks. At that point, the case would be at the disposition phase and the juvenile would be placed on probation and have services ordered or could be sentenced to a youth rehabilitation and treatment center, where the average length of stay is about 9 months, although the length of stay is individualized.

At the time of the hearing on the motion to transfer, Bravo also had pending charges against him in Douglas County for robbery and use of a firearm to commit a felony. One of the exhibits presented by the State showed that an information was filed against Bravo in Douglas County District Court on November 6, 2019. The crimes were alleged to have occurred on September 29, the day before the alleged crimes in the present case.

Following the hearing, the district court denied the motion to transfer the matter to juvenile court. In its order, the district court considered the statutory factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016) and concluded that a sound basis existed for it to retain jurisdiction over the case.

ASSIGNMENT OF ERROR

Bravo assigns that the district court erred in denying his motion to transfer the case to juvenile court.

STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

Bravo assigns that the district court erred in denying his motion to transfer the case to juvenile court. Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, both of the allegations against Bravo put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).

In the instant case, when Bravo moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *State v. Comer*, 26 Neb. App. 270, 918 N.W.2d 13 (2018). In conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "'a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.'" *Id.* at 276, 918 N.W.2d 18. "'The burden of proving a sound basis for retention lies with the State.'" *Id.*

In its order, the district court set out each of the factors found in § 43-276 and made findings regarding each one. It set forth which factors favored the court retaining jurisdiction, which factors favored transferring the case to juvenile court, and which factors were considered but not applied due to a lack of evidence.

Bravo argues that the State did not meet its burden of establishing a sound basis for retaining the case in district court. He contends that the factors the court found to weigh in favor of retaining jurisdiction actually weighed in favor of transferring the case to juvenile court.

The district court first found that "the type of treatment such juvenile would most likely be amenable to" was a factor in favor of it retaining jurisdiction. Bravo contends that the court did not state why it found that this factor weighed in favor of the district court retaining jurisdiction. He argues that there was evidence presented about the availability of rehabilitative services in juvenile court. While that may be true, the availability of services is not the same as the type of treatment Bravo would be responsive to and willing to cooperate with. The district court found, based on Bravo's active juvenile case in Douglas County, that Bravo had not availed himself to the services of the juvenile court. It noted that Bravo had run away from a shelter placement, and after he was found and placed in his mother's home, he would not charge the global positioning system tracker device, would leave the house without permission, and failed to go to school consistently. He was also charged with robbery and use of a firearm to commit a felony in Douglas County during the time he was placed at his mother's home. The court concluded that the evidence was clear and convincing that Bravo had not responded to any less restrictive placement than secure facilities.

Bravo next takes issue with the district court's finding that there was evidence that the alleged offenses included violence, and therefore, this factor favored retention in district court. Bravo argues that the robbery at issue where Bravo brandished a gun involved only a threat of violence rather than an act of violence. The court found that the robbery with the use of a gun was a crime of violence. We cannot say that the court's determination on this factor was an abuse of discretion.

The court next found that Bravo's previous history, including whether he had been convicted or adjudicated in juvenile court, weighed in favor of keeping the case in district court. Bravo argues that he has never been convicted of any crime and that he has not been "fully adjudicated" in the separate juvenile court of Douglas County on the attempted robbery charge because it had not reached disposition. The record shows, however, that Bravo admitted to the attempted robbery charge and was adjudicated in the separate juvenile court of Douglas County. The factor only considers whether a juvenile has been adjudicated, it does not require that the case has reached disposition. Bravo has been adjudicated.

The court also found that the consideration of public safety factor weighed in favor of retaining the case in district court. Bravo argues that the court ignored the very purpose of juvenile probation, which is "to provide rehabilitative services to youth, thereby modifying their behaviors which enhances public safety." Brief for appellant at 8. However, the evidence at the hearing showed that Bravo brandished a gun during the robbery. The court found that the robbery with the use of a gun was a public safety concern. We cannot say that the court's determination on this factor was an abuse of discretion.

The next factor the court found weighed in favor of retaining jurisdiction was whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his minority and, if so, the available alternatives best suited to this purpose. Bravo argues that this factor should have weighed

in favor of transferring the case because Bal testified that Bravo could successfully complete rehabilitative services ordered by a juvenile court before his 19th birthday in November 2021. However, Bal also stated that there was no guarantee that Bravo would be able to finish requirements ordered by the juvenile court by his 19th birthday. Further, Bal's testimony was in reference to Bravo's case in the separate juvenile court of Douglas County where he had already been adjudicated, not the present case in Sarpy County.

The court also noted that Bravo appeared to be continuing to commit the same type of offenses that initially brought him into the separate juvenile court of Douglas County in that he had been involved in three robbery-related offenses in a year. And the evidence showed that he had not been willing to cooperate with the juvenile services he had been offered and that secure detention was necessary. Further, as the district court found, Bravo was 17 years old at the time of the motion to transfer hearing and had less than 2 years available to "correct the mindset that resulted in three charges of robbery."

The final two factors the court found to weigh in favor of retaining the case were whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm, and other such matters as the parties deem relevant to aid in the decision. In regard to the unauthorized use or possession of a firearm factor, the court noted that Bravo had allegedly brandished a firearm in the robbery at issue. The court did not specifically state what "other such matters" it considered. Bravo contends that the court erred in finding these two factors weighed in favor of retaining the case in district court but makes no argument as to why the court should have found these factors favored transferring the case to juvenile court.

We conclude that the district court adequately considered all the factors set forth in § 43-276(1) and that the evidence supports the district court's denial of Bravo's motion to transfer. When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to the juvenile court. *State v. Blimling*, 25 Neb. App. 693, 911 N.W.2d 287 (2018). Upon our review of the record, we cannot say that the district court abused its discretion in denying Bravo's motion to transfer to juvenile court and in finding a sound basis to retain jurisdiction in district court.

CONCLUSION

For the reasons stated in this opinion, we conclude that the district court did not abuse its discretion in denying Bravo's motion to transfer the case to juvenile court.

AFFIRMED.