IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BURNS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVION BURNS, APPELLANT.

Filed March 14, 2023.    No. A-22-852.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Ronald C. Betita for appellant.

Michael T. Hilgers, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

Davion Burns appeals from an order of the district court for Douglas County denying his request to transfer his case to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## II. BACKGROUND

On July 21, 2022, the State filed an information charging Burns with count 1, attempted assault in the first degree, a Class IIA felony, in violation of Neb. Rev. Stat. § 28-308(1) (Reissue 2016) and § 28-201(4)(b) (Reissue 2016); count 2, discharging a firearm while in or in proximity of any motor vehicle at any person, dwelling, building, structure, or occupied motor vehicle, a Class IC felony, in violation of Neb. Rev. Stat. § 28-1212.04 (Reissue 2016); count 3, use of a deadly weapon (firearm) to commit a felony, a Class IC felony, in violation of Neb. Rev. Stat.

- 1 -

§ 28-1205(1)(a) and (c) (Reissue 2016). Burns was 16 years and 11 months old at the time the alleged offenses were committed.

Burns filed a motion to transfer the case to juvenile court on August 8, 2022. A hearing was held on October 11. At the time of the hearing Burns was 17 years old.

The State offered seven exhibits into evidence at the hearing, including police reports, probation reports, juvenile court dockets, criminal history, and a return from juvenile diversion/juvenile assessment center. The State called one witness, James Bankhead, Burns' probation officer. Burns did not call any witnesses but offered multiple exhibits, including a mental health evaluation, a sports physical exam, a Douglas County Youth Center (DCYC) report, and correspondence from his therapist.

The evidence established that on June 16, 2022, Omaha Police Officers were called to a residence based on a report of an attempted felony assault. Upon arrival, the victim, Oscar Garcia, told officers his wife woke him up and informed him multiple suspects were stealing bicycles from their yard. Garcia's wife began chasing after them on foot. Garcia then got in his vehicle to pursue the suspects, one of which was riding a stolen bicycle. Garcia reported that he was able to "cut off" the suspect on the bicycle, who then left the stolen bicycle behind and got into an awaiting vehicle. Garcia reported he loaded the bicycle into his vehicle and backed out into the street when two gun shots were fired at the front end of his vehicle from the vehicle the suspects were in. He then drove home and called 911.

The police reports indicate that a short time after the incident, the suspects arrived at a pawn shop and were taken into custody for questioning. During the interview, the suspect identified as Burns admitted to stealing the bicycles with the help of another individual. Burns also admitted to firing two shots from a .45 caliber handgun toward the owner of the bicycles and that the shots struck the front of the owner's vehicle. Burns told police he gave the handgun to another individual in the "get away" vehicle, who then put it in a lockbox at Burns' cousin's apartment. Police executed a search warrant at the apartment and recovered the handgun in the location where Burns indicated it would be. One of the other suspects told police he, Burns, and another individual attempted to steal the bicycles with the intent of pawning them.

Bankhead, a juvenile probation officer who supervises high-risk youth on probation, testified about his time as Burns' probation officer as well as the juvenile system in general. Bankhead was assigned to Burns in December 2021 after he was adjudicated in juvenile court on truancy offenses. Bankhead testified that Burns had been ordered to participate with GPS monitoring, gang intervention, family support, and a prosocial activity (such as a school activity or part-time job). He explained that Burns was never actually put on GPS monitoring because he had been following curfew according to his mother. Bankhead also testified that when he first started supervising Burns he missed a few meetings, but after he addressed it with Burns and his mother, Burns stopped missing meetings. Burns also was assigned a gang intervention specialist to work with him. The goal of gang intervention is to give a juvenile some tools to help them stay away from being involved with gang life. Gang intervention was ordered for Burns based on reports from the Omaha Police Department. On cross-examination, Bankhead testified that although Burns associates with members of the Flatland Bloods gang, Bankhead did not recall Burns claiming membership or participating in gang activity with the Flatland Bloods.

Bankhead testified that Burns had a job when he was first assigned to Burns' case, but shortly thereafter he either quit or was fired. Burns had not obtained another job since then, nor was he involved in any school activity or other "prosocial activity." Burns had also been ordered to attend school, but he was not complying.

Bankhead stated that Burns and his family were offered in-home services which Bankhead believed would be beneficial, but Burns' mother did not believe they needed the services. Bankhead testified that it is important for families to be engaged with the services offered by probation so they can continue to provide the necessary structure and supervision for the juvenile once probation ends.

Burns was also ordered to complete a co-occurring mental health evaluation and substance abuse evaluation, which he completed nine or ten months before the hearing. However, Bankhead testified that Burns was not following all the recommendations.

Bankhead testified that the juvenile system is rehabilitative and is meant to support the juvenile and remediate any underlying issues with the juvenile. He stated that if a juvenile fails to take advantage of and/or fails to follow the court-ordered services, the rehabilitative process may not be successful.

Bankhead testified that if a case, such as the present one, was transferred from district court to juvenile court, there would be a pretrial hearing, adjudication hearing, and then a disposition hearing. He testified the process takes time and would limit the amount of time available to rehabilitate before Burns turns 19 years old. Bankhead explained the various services that could be offered to Burns in juvenile court, including mental health services, individual therapy, family therapy, substance abuse treatment, family preservation services, and electronic monitoring. He also described the different out of home placements utilized in juvenile court. He testified that a firearm charge, a violent offense, and gang affiliation can all limit placement options in juvenile court, and a combination of all three can potentially limit placement options further.

At the time of the hearing, Burns was placed at DCYC, a detention center, where he had been for several months. He was engaged in school and therapy at DCYC and Bankhead was not aware of any issues Burns had since being placed there.

Bankhead also testified that at the time of the hearing, Burns had another open juvenile court docket in which he had been charged with domestic assault and criminal mischief. That case was at the pre-adjudication stage.

Bankhead testified that although Burns had turned 17, he believed two years was sufficient time to provide rehabilitative services to Burns. However, he acknowledged that due to the process that would be required if the case was transferred to juvenile court, there would be far less than two years' time to provide rehabilitative services. Bankhead was also concerned that because Burns was not complying with or had not completed current court orders, if this case was transferred to juvenile court Burns would continue to ignore or fail to follow court orders.

Following the hearing the district court found that the State had met its burden of establishing a sound basis for retention of jurisdiction. It stated that it had balanced public protection and societal security against the practical and non-problematic rehabilitation of Burns and concluded that Burns' motion to transfer the matter to juvenile court should be denied.

## III. ASSIGNMENT OF ERROR

Burns assigns that the district court erred in denying his motion to transfer the case to juvenile court.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

Burns assigns that the district court erred in denying his motion to transfer the case to juvenile court. Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all the charges against Burns put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Reissue 2016).

In the instant case, when Burns moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2020):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a).

In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *State v. Comer*, 26 Neb. App. 270, 918 N.W.2d 13 (2018). In conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *Id.* at 276, 918 N.W.2d 18. The burden of proving a sound basis for retention lies with the State. *Id.*

In its order, the district court reviewed and analyzed each of the factors found in § 43-276(1). It found that ten factors favored the district court retaining jurisdiction, two factors favored transferring the case to juvenile court, and two factors were neutral.

Burns disagrees with the court's analysis of the factors and argues that the State did not meet its burden of establishing a sound basis for retaining the case in district court.

1. FACTORS FAVORING RETENTION

The district court found that the following factors weighed in favor of it retaining jurisdiction over Burns.

(a) § 43-276(1)(b) – Evidence of Violence in Alleged Offenses

The district court found that this factor weighed in favor of the court retaining the case based simply on the alleged offenses themselves. Burns admits that the offenses are, by their nature, violent acts. He argues, however, that there is nothing to indicate that the offenses were committed in a premeditated manner. Rather, he contends the allegations and reports indicate his actions were reactionary.

(b) § 43-276(1)(c) – Motivation for Commission of Offenses

The district court stated that the motivation for the attempted theft of bicycles was for financial gain. Burns points out that the court did not provide a motivation for the discharge of the firearm and suggests that such failure is an abuse of discretion.

(c) § 43-276(1)(d) – Age of Juvenile and Others Involved

The district court noted that the offenses allegedly committed by Burns involved two other individuals who were older than Burns. The court stated that "[a]lthough these two individuals are older that [Burns], there is no evidence before the Court that either of these two individuals in any way coerced [Burns] to allegedly possess and discharge a firearm."

Burns argues that the court's contention that the older two individuals did not say anything to Burns or interact with him during the alleged incident because it is not in any reports is "ignorant of relationship and/or social dynamics between [Burns] and these older individuals." Brief for appellant at 15.

### (d) § 43-276(1)(e) – Previous History of Juvenile

The district court noted that Burns had been previously adjudicated in juvenile court in September 2021 as a result of being habitually truant from school. Burns was put under the supervision of a juvenile probation officer and was serving an open-ended term of probation at the time of the hearing in this case. In April 2022 the State filed another petition against Burns in juvenile court alleging two misdemeanor offenses: domestic assault in the third degree and criminal mischief, $0-$500. At the time of the motion to transfer hearing, Burns had not been adjudicated on these charges. The district court made note of the fact that Burns was on probation at the time he allegedly committed the two misdemeanor offenses and the felony offenses charged in the present case.

Burns points out that the only offense that resulted in his adjudication was truancy and that the new juvenile case had not been adjudicated at the time of the hearing in this case. He also criticizes the court for failing to explain why it mattered that Burns was on juvenile probation at the time of the present offenses. He also states that his failure to start individual therapy was not due to a lack of engagement on his part but rather, as Bankhead indicated, was due to Burns' mother being too busy to take him to therapy. Burns also points out that Bankhead never put Burns on GPS monitoring because he was following his curfew, and there was no information that he ever tested positive for illegal substances.

### (e) § 43-276(1)(g) – Consideration of Public Safety

The district court found that retaining jurisdiction in the district court promoted the goal of specific deterrence, i.e., that individuals who commit crimes and are thereafter apprehended and punished will be deterred from engaging in future criminal activity, as well as the goal of general deterrence, i.e., that the general population will be deterred from offending when they are aware of others being apprehended and punished for their criminal activity.

Burns states that Bankhead testified that he believed two years was enough time to provide rehabilitation services and that there were services available if the case was transferred. However, Bankhead also testified that there would be less than two years to rehabilitate, and he was concerned that Burns would not comply with the juvenile court's orders, just as he had been doing under his adjudicated juvenile case.

### (f) § 43-276(1)(h) – Consideration of Juvenile's Ability
### to Appreciate Nature and Seriousness of His Conduct

The district court stated that Burns had the ability to appreciate the nature and seriousness of his conduct, and his alleged possession and discharge of a firearm did not appear to be accidental or unintentional. Burns states that his educational needs indicate that he may not be sophisticated for his age and may not appreciate the seriousness and long-term consequences of his actions. There was evidence that he had an Individual Education Plan at school and read at a first-grade level.

### (g) § 43-276(1)(i) – Best Interests and Security of Public

The district court discussed the statutory penalties for the charges Burns was facing, a Class IIA felony and two Class IC felonies. It also stated that the juvenile court would lose jurisdiction

over Burns when he turns 19 years of age, whether or not he had benefitted from the services provided to him.

Burns argues that in finding this factor weighed in favor of retention, "[t]he court failed to adequately consider his treatment amenability, the length of time needed for residential treatment, and the unlikelihood of recidivism if the matter were transferred to juvenile court." Brief for appellant at 18.

### (h) § 43-276(1)(k) – Whether a Juvenile Pretrial Diversion Program Is Established

The district court stated that Burns allegedly committed these felony offenses while on probation through the juvenile court and therefore it seems he requires an even higher level of supervision and structure. The court further stated that it does not seem to be a realistic possibility that Burns could participate in a pretrial diversion program if the case was transferred to juvenile court.

The district court also found that Burns was previously given an opportunity to participate in the juvenile pretrial diversion program in 2019 on a criminal mischief charge which involved breaking windows. Burns had also participated in Truancy Diversion through the Juvenile Assessment Center in 2021 but was referred back for prosecution "due to the amount of unexcused absences since being placed on diversion."

Burns argues that this factor should be neutral because it simply considers whether there is a juvenile pretrial diversion program established, and not whether Burns is a good candidate for pretrial diversion. He suggests that the court's reasoning demonstrates that there is a diversion program that exists.

### (i) § 43-276(1)(l) – Conviction or Acknowledged Unauthorized Use or Possession of Firearm

The district court stated that during a recorded interview, Burns admitted that after getting into the getaway vehicle he shot two shots

> from a .45 caliber handgun he was in possession of at the bicycle owner, striking his vehicle twice in the front bumper/grill of the vehicle. [Burns] further stated that he gave the handgun to another individual who placed it in a lockbox at [a residence]. A search warrant was executed at [that residence] where the handgun was located and booked as property.

Burns points out that he has not been convicted of unauthorized use or possession of a firearm. However, in addition to a conviction, the factor also includes acknowledged use or possession of a firearm. Burns' statement to the police indicates he acknowledged possessing and using a firearm.

### (j) § 43-276(1)(n) – Gang Membership

The district court found that the juvenile court had assigned a gang intervention specialist to work with Burns but as of January 2022 he had not been engaging with gang intervention, as he had only attended one meeting. The court also stated that Bankhead testified that Burns reported that he associates with Flatland Blood gang members. In his mental health evaluation, Burns

reported "he had some friends who are a part of a gang, but he isn't part of one and doesn't feed into that." The evaluation further noted that "Collateral [information] stated [Burns'] family grew up involved with gangs and most are Bloods."

Burns reemphasizes that he stated he was not a member of a gang and Bankhead also indicated that he did not participate in any gang activity. He argues that the court abused its discretion in considering him a gang member when the evidence did not support that conclusion.

### 2. FACTORS FAVORING TRANSFER

The district court found two factors that favored transferring this matter to juvenile court -- § 43-276(1)(f) and (m). Regarding § 43-276(1)(f) the court found that it would be in Burns' best interest for the case to be transferred to juvenile court as opposed to being a convicted felon and exposed to the possibility of serving a lengthy sentence of incarceration should he be convicted of the charges. Regarding § 43-276(1)(m), whether a juvenile court order has been issued for the juvenile pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016), the court found there had been no previous finding from the juvenile court that Burns was not amenable to rehabilitative services that can be provided under the Nebraska Juvenile Code.

### 3. NEUTRAL FACTORS

The district court found two factors to be neutral -- § 43-276(1)(a), the type of treatment a juvenile would most likely be amenable to, and § 43-276(1)(j), whether the victim or juvenile agree to participate in restorative justice.

Regarding § 43-276(1)(a), the court found that Burns' mental health evaluation noted Burns was taking medication for anxiety. The court noted the relationship between his medical history and his criminal justice involvement. The evaluation documented difficulties in school including being expelled from middle school "due to anger issues like hitting teachers and calling them names." He also did not pass any of his classes in ninth grade. The evaluation also noted that Burns "has been expelled due to his behaviors and has issues with truancy which increases his criminogenic risk." And further, Burns "has a history of trauma, can struggle with his anger and acts impulsively which has led to his criminal justice involvement." The evaluation recommended that Burns participate in individual therapy, which he began in June 2022 when he was incarcerated at DCYC. His therapist believed he would benefit from "ongoing therapy once he leaves DCYC because he has childhood trauma that he needs to process."

The district court also found that the juvenile court had been providing rehabilitative services to Burns since late September 2021. Bankhead testified that if the matter were transferred to juvenile court, the juvenile court would likely have trouble finding an out of home placement for Burns due to the nature of the pending charges as well as the fact that he associates with gang members.

Regarding § 43-276(1)(j), the court found this factor to be neutral because there was no evidence presented as to whether the victim of these offenses or Burns agreed to participate in restorative justice.

The court further found there were no other relevant matters that would aid in its decision. See § 43-276(1)(o).

### 4. No Abuse of Discretion

In our review, we find the district court's rationale for denial of the motion to transfer was fully supported by the record. As noted by the district court, the serious nature of the charged offenses, Burns' prior involvement in the juvenile court system, his age, and the safety and security of the public, all weighed heavily in favor of the district court retaining jurisdiction.

The offenses were violent in nature and involved a firearm. Burns, who had just stolen property from the victim, fired two shots at the victim after he abandoned the bicycle and was safely in the get-away car. There was no indication that Burns himself was threatened or in danger at that point. Burns put the victim's life at risk, as well as the public given that the incident occurred on a neighborhood street.

Burns' involvement with the juvenile court at the time of the hearing and his lack of cooperation with the court orders indicate he would not be amenable to services and treatment offered to him if this case was transferred to juvenile court. Burns was adjudicated in juvenile court for truancy and was on probation at the time of the current alleged offenses. Even after being adjudicated, Burns was not attending school and not complying with other court orders, such as individual therapy and being involved in a prosocial activity. It was not until he was placed at DCYC that he was engaged in school and therapy.

Burns had previously been charged with criminal mischief and allowed to participate in the juvenile pretrial diversion program. Burns also participated in Truancy Diversion through the Juvenile Assessment Center but was referred back for prosecution based on the number of unexcused absences. Additionally, at the time of the transfer hearing, he had another pending case in juvenile court for domestic assault and criminal mischief. Burns was on probation at the time he allegedly committed the two misdemeanor offenses.

Bankhead testified he was concerned that if this case was transferred to juvenile court Burns would continue to disobey court ordered services. He also noted that Burns' placement options would be limited based on certain circumstances and that the time to rehabilitate would be limited.

We conclude that the district court adequately considered all the factors set forth in § 43-276(1) and that the evidence supports the district court's denial of Burns' motion to transfer. When a court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said that the court abused its discretion in refusing to transfer the case to the juvenile court. *State v. Blimling*, 25 Neb. App. 693, 911 N.W.2d 287 (2018), *review denied* (May 8, 2018). Upon our review of the record, we cannot say that the district court abused its discretion in finding a sound basis to retain jurisdiction in district court and denying Burns' motion to transfer the case to juvenile court.

### VI. CONCLUSION

For the reasons stated in this opinion, we conclude that the district court did not abuse its discretion in denying Burns' motion to transfer the case to juvenile court. The district court's order is affirmed.

AFFIRMED.